COURT OF APPEALS
DECISION
DATED AND FILED

April 4, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1735-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF324

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

SEAN W. MOORE,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for La Crosse County: GLORIA L. DOYLE, Judge. *Affirmed*.

Before Kloppenburg, P.J., Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Sean Moore appeals a judgment of conviction and an order denying his postconviction motion. The issue is whether his trial counsel was ineffective. We affirm.

¶2 Moore was charged with several felony and misdemeanor offenses. These included charges of false imprisonment, intimidation of a victim, and battery that were alleged to have occurred in May 2020, all involving the same victim. The jury found Moore guilty on ten of the twelve counts. Moore filed a postconviction motion alleging numerous ways in which his trial counsel provided ineffective assistance. The court held an evidentiary hearing and denied the motion.

¶3 To establish ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that such performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We affirm the circuit court's findings of fact unless they are clearly erroneous, but the determinations of deficient performance and prejudice are questions of law that we review without deference to the circuit court. *State v. Pitsch*, 124 Wis. 2d 628, 633-34, 369 N.W.2d 711 (1985). We need not address both components of the analysis if defendant makes an inadequate showing on one. *Strickland*, 466 U.S. at 697. The test for deficient performance is an objective one that asks whether trial counsel's performance was objectively reasonable under prevailing professional norms. *State v. Kimbrough*, 2001 WI App 138, ¶¶31-35, 246 Wis. 2d 648, 630 N.W.2d 752.

¶4 Moore first argues that his attorney was ineffective by not investigating Moore's wife as a potential witness. The State responds that counsel's performance was not deficient because Moore did not provide counsel

with information about how his wife's testimony could benefit Moore's defense such that counsel was required to investigate Moore's wife as a potential witness. We conclude that counsel's performance was not deficient.

¶5    We first clarify that, to the extent Moore is claiming that counsel made "no" investigation into his wife, that is not consistent with the record. Counsel testified that she "kept asking [Moore] what would be the point" of having his wife testify, and that Moore "couldn't come up with any reason." Moore's testimony acknowledged as much:  "And then when [counsel] asked me why, I told her that, that she would answer that for herself."  From this testimony, it is clear that counsel's decision not to further investigate Moore's wife was not based on a passive failure by Moore to offer a reason that counsel should investigate his wife, but instead on Moore's active refusal to provide a reason when directly asked by counsel.

¶6    Moore nevertheless asserts that defense counsel "must investigate and speak to a [potential trial] witness even when the only information given to the attorney by their client is the name of the potential witness."  In support, Moore relies heavily on a federal case, *Washington v. Smith*, 219 F.3d 620 (7th Cir. 2000).  There, in a habeas case arising from a Wisconsin conviction, the Seventh Circuit determined that counsel's performance was deficient because counsel did not investigate fourteen potential witnesses whose names the defendant gave to counsel on the day of trial. *Id.* at 630-32.

¶7    In its response, the State attempts to distinguish *Washington* by arguing that counsel's failure to investigate in that case was not a situation like Moore's, in which counsel was given only the potential witness's name, without further reason to believe that the potential witness had anything beneficial to

3

provide to the defense.  According to the State, Washington's counsel also knew that the names Washington provided were of potential alibi witnesses, and therefore counsel should have understood the potential nature of their testimony and significance to the defense case, making the failure to investigate less reasonable.  However, in his reply, Moore points to portions of the *Washington* opinion that could be read to suggest that Washington's counsel did *not* know why the defendant had given him those names.  When asked whether the defendant said why he thought those fourteen people named might be important as witnesses, counsel said:  "We didn't even have time to discuss it because the trial started immediately thereafter."  *Id.* at 630.  Counsel also did not discuss those names with the defendant during breaks in the trial.  *Id.* at 631.

¶8      Thus, Moore appears to be correct that *Washington* could be understood as standing for the proposition that counsel rendered deficient performance by not performing the formidable task of investigating fourteen potential witness names on the day of trial, even when counsel had no other information about those persons.[1]

---

[1] Based on the description of the timeline in the *Washington* opinion, it is difficult to see how, as a practical matter, such an investigation could have occurred before the trial started. *Washington v. Smith*, 219 F.3d 620, 633 (7th Cir. 2000).  Perhaps the Seventh Circuit's conclusion could be understood to be that counsel rendered deficient performance by not asking for a postponement of the trial so that an investigation could occur.  That conclusion would, in turn, lead to a question about whether the defendant established prejudice by showing a reasonable probability that such a delay would have been granted.  The court in *Washington* noted that this court's affirmance of the conviction had depended in part on "the fact that a mid-trial adjournment would have likely been denied." *Id.*  However, the *Washington* court then did not discuss that point further in its own prejudice analysis, but apparently just assumed that an investigation would have been permitted, as the court went on to conclude that this court "looked at the mass of evidence that Washington could have produced but for [counsel's] errors, and it unreasonably concluded that its absence did not cause prejudice." *Id.* at 635.

¶9 However, holdings of the federal Court of Appeals are not binding on Wisconsin courts. *State v. Mechtel*, 176 Wis. 2d 87, 94, 499 N.W.2d 662 (1993) (determinations on federal questions by either the federal circuit courts of appeal or the federal district courts are not binding upon state courts). Moore has not cited any binding authority for the bright-line proposition that it is unreasonable for counsel to decide not to spend limited time and resources investigating a witness when the defendant does not identify any reason to believe that the witness could provide information that is favorable to the defense.

¶10 Instead of that bright-line proposition, we are left to consider the reasonableness of counsel's decision based on the specific facts:

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.

*Strickland*, 466 U.S. at 691.

¶11 We first observe that there is nothing about the factual allegations in the complaint that would have led defense counsel to believe that Moore's wife might have relevant or helpful testimony. Moore has not pointed to any other

5

source of information, such as police reports or statements of other witnesses, that should have directed counsel's investigatory focus to Moore's wife. Therefore, if counsel was going to have a reason to investigate Moore's wife, it would most likely need to come from Moore himself. As discussed earlier, counsel attempted to learn from Moore why his wife should be contacted, but Moore refused to provide further information. As a result, counsel made a reasonable decision not to further investigate Moore's wife in pursuit of unknown potential information of unknown value, despite Moore's request that counsel do so.

¶12    Moore also relies on *Toliver v. McCaughtry*, 539 F.3d 766 (7th Cir. 2008). He asserts that it stands for the proposition that, when counsel did not investigate a potential witness out of concern that the witness might be perceived as biased, this was not a reasonable strategic decision unless counsel first interviewed the witness to evaluate his testimony and presentation. However, even if *Toliver* stands for that proposition, not every decision that counsel makes when preparing for a case is a "strategic" one. There is no question of strategy involved when counsel decides not to investigate a person who appears to have no meaningful connection to the case.

¶13    Moore next argues that his trial counsel was ineffective by not obtaining the phone that he was carrying at the time of his arrest. At the postconviction hearing, Moore testified that the phone contained a video sent to him by the victim that would have undercut her testimony, and that he told counsel to retrieve the phone from the jail, but counsel never obtained the phone. However, the circuit court found that Moore kept from his counsel the nature of the content on the phone that might be significant. Moore does not argue that this finding was erroneous, and we accept it. Accordingly, the resolution of this issue is similar to that of the previous issue. Counsel could reasonably decline to obtain

a phone, despite the defendant's request, when the defendant did not tell counsel that it had any specific evidentiary value.

¶14    Moore next argues that his trial counsel was ineffective by not subpoenaing the victim's phone and phone records. If counsel had done so, he argues, counsel would have obtained the video from the victim that he testified about in support of the previous issue. Again, this argument fails because Moore does not claim that he told his trial counsel that this would be a reason to investigate the victim's phone.

¶15    Moore next argues that his trial counsel was ineffective by calling the victim's mother as a witness at trial without first interviewing her or knowing what her testimony would be. He argues that the testimony from the mother was damaging to Moore's case because the mother described an injury she observed on the victim, which the victim attributed to Moore, and the mother testified that the victim was afraid of Moore. The State responds that counsel made a reasonable strategic decision to call the mother as a witness because counsel believed that her testimony would be likely to help Moore's case, regardless of how she testified.

¶16    More specifically, counsel testified that she "didn't really care" how the victim's mother would testify. Counsel explained that, if the mother testified that she had not heard about the victim's allegations of injuries caused by Moore, that would reinforce Moore's theory that the victim was "making them up." However, if the mother testified that she had been aware of the victim's alleged injuries, counsel testified that "then the question becomes why didn't she do something about them." We understand counsel to have meant that such testimony would not be credible if the mother had not also taken action to protect

her daughter, which was the way counsel argued this point in closing argument at trial.

¶17     Moore argues that his position is supported by *State v. Domke*, 2011 WI 95, 337 Wis. 2d 268, 805 N.W.2d 364.  There, the court held that it was deficient performance for counsel to have called a witness without speaking to her.  *Id.*, ¶¶51-53.  The court stated:  "A reasonable attorney, knowing that a witness had been vacillating" about whether she believed the victim or the defendant, "would have done some investigation when faced with the risk of calling a witness who may provide either extremely useful or extremely damaging testimony."  *Id.*, ¶52.

¶18     The contrast between *Domke* and Moore's case is apparent based on the above-quoted language.  In *Domke*, counsel did not talk to the witness under circumstances where the witness's testimony could be extremely damaging.  Here, by contrast, although trial counsel's investigator had told counsel that the mother would be more likely to favor the victim than the defense, counsel's analysis, as described above, anticipated that possibility and sought to capitalize upon it.  We cannot conclude that counsel's analysis was an unreasonable one that was outside the wide range of professional norms.

¶19     Moore next argues that his trial counsel was ineffective by not investigating certain acts by the victim that, in the defense investigator's view, would have showed the victim's dishonesty in other cases.  Moore argues that counsel was ineffective by not filing an other-acts motion and seeking to have

evidence of these acts admitted for the purposes of "motive and intent to lie" under WIS. STAT. § 904.04(2)(a).[2]

¶20    This argument fails because Moore does not acknowledge the applicable rule of evidence.  At bottom, Moore's argument is that counsel should have presented evidence of specific instances in which the victim was allegedly untruthful in the past to attack her character for truthfulness.  However, WIS. STAT. § 906.08(2) precludes the use of such evidence for that purpose.  It provides:  "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than a conviction of a crime or an adjudication of delinquency as provided in [WIS. STAT. §] 906.09, may not be proved by extrinsic evidence."  *See* § 906.08(2).[3]  Moore does not provide any argument showing that this rule may be skirted by reframing the extrinsic evidence as evidence of "other acts."[4]

¶21    Moore next argues that his trial counsel was ineffective by failing to object to a circuit court ruling that the victim's sister would not be allowed to testify about the victim's character for truthfulness.  This framing of the issue does not fully take into account the actual record from the trial.  When the defense called the sister as a witness, the prosecutor objected to her being asked about the

---

[2] All references to the Wisconsin Statutes are to the 2021-22 version.

[3] WISCONSIN STAT. § 906.08(2), which bars extrinsic evidence, allows specific instances of conduct to be inquired into on cross-examination of the witness.  However, even if Moore were to now reframe his argument to be that counsel was ineffective by not cross-examining the victim about these other incidents, he has failed to show prejudice, because he did not call the victim as a witness at the postconviction hearing to establish what her responses to that cross-examination would have been.

[4] The State's brief on appeal contained an argument on the topic of other-acts evidence that it later asked to withdraw.  We have not considered that argument here.

victim's character for truthfulness. As grounds, the prosecutor explained, the sister told the State's investigator that she believed that the victim was not truthful, but that, to quote the prosecutor's argument, "she's just assuming this." In response, Moore's counsel *agreed* that she would not ask the sister for such opinion evidence.

¶22 In practical effect, then, there was no "ruling" by the circuit court that barred the sister's opinion evidence, and Moore's argument premised on the existence of such a ruling fails. To the extent that the argument might be reframed as one that trial counsel was ineffective by not seeking to ask the sister's opinion, that would require a factual showing that counsel would have had some basis to dispute the prosecutor's description of the sister's opinion as being merely an assumption. Moore does not point to any specific evidence in the record that would perform that function. The facts that they were siblings and lived together at one point do not suffice.

¶23 Finally, Moore argues that his trial counsel was ineffective by not asking several questions of witnesses during trial. As to the claim that counsel should have asked the victim or Moore about the video Moore said she sent to him, it appears that counsel was not aware of this video before receiving a note that Moore handed to counsel during trial. It was not unreasonable for counsel not to explore a subject during trial about which she lacked significant information in advance.

¶24 As to the claim that counsel should have asked Moore or the officer who questioned him about whether Moore appeared to be intoxicated at the time Moore provided a statement to the officer, Moore does not point to any basis in the

record to conclude that counsel knew about this issue before Moore wrote a note raising the issue during the trial.

¶25    As to the claim that counsel should have asked Moore or the victim whether they had consensual sex shortly after one of the charged incidents, Moore testified at the postconviction hearing that he never told his attorney this fact.

¶26    Finally, Moore argues that counsel should have asked Moore or the victim whether they were under the influence of cocaine or other substances during the charged incidents, for the purpose of creating doubt about the reliability of the victim's memory.  The postconviction testimony of Moore and counsel differed on whether Moore told her about this before trial.  The circuit court did not appear to make a specific finding on this point.  However, even if counsel was aware of this assertion by Moore, it was reasonable not to bring this information out.  The victim had already acknowledged that she had been drinking. Furthermore, bringing out to the jury that Moore and the victim were *both* using cocaine, as Moore stated at the postconviction hearing, would also have undercut Moore's own credibility at trial when he testified about what did and did not happen with respect to the charged incidents.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.