# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2010AP425 |
| COMPLETE TITLE: | State of Wisconsin,<br>   Plaintiff-Respondent,<br>  v.<br>Tramell E. Starks,<br>   Defendant-Appellant-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 336 Wis. 2d 474, 801 N.W. 2d 348
(Ct. App. 2011 – Unpublished)

| | |
|---|---|
| OPINION FILED: | July 12, 2013 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 9, 2013 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|  COURT: | Circuit |
|  COUNTY: | Milwaukee |
|  JUDGE: | Kevin E. Martens |

| | |
|---|---|
| JUSTICES: | |
|  CONCURRED: | |
|  DISSENTED: | BRADLEY, J., ABRAHAMSON, C.J., CROOKS, J., dissent. (Opinion filed.) |
|  NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs by *Tricia J. Bushnell*, *Caitlin Plummer*, *Lindsey E. Smith* and law student practitioners *Michael Boshardy, R. Warren Beck, and Joshua Jarrett,* and *Frank J. Remington Center*, Madison, with oral argument by *Tricia J. Bushnell*.

For the plaintiff-respondent, the cause was argued by *Sarah K. Larson*, assistant attorney general, with whom on the brief was *J.B. Van Hollen*, attorney general.

An amicus curiae brief was filed by *Robert R. Henak* and *Henak Law Office*, Milwaukee, on behalf of the Wisconsin Association of Criminal Defense Lawyers.

2013 WI 69

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2010AP425
(L.C. No. 2006CF450)

STATE OF WISCONSIN      :      IN SUPREME COURT

**State of Wisconsin,**

      **Plaintiff-Respondent,**

  **v.**

**Tramell E. Starks,**

      **Defendant-Appellant-Petitioner.**

**FILED**

**JUL 12, 2013**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1    MICHAEL J. GABLEMAN, J.    This case began with the murder of Lee Weddle in his apartment on a spring day in 2005. A subsequent police investigation resulted in charges against the petitioner in this case, Tramell E. Starks, for first-degree intentional homicide as a party to a crime and possession of a firearm by a felon. Following a jury trial, he was convicted of the lesser-included offense of reckless homicide and the felon-in-possession of a firearm charge.[1] On direct appeal, Starks's

---

[1] The Honorable William W. Brash, III, presiding.

convictions were affirmed. State v. Starks, No. 2008AP790-CR, unpublished slip op. (Wis. Ct. App. Dec. 23, 2008) (Starks I).

¶2 Subsequently, Starks filed a motion pursuant to Wis. Stat. § 974.06[2] (2011-12)[3] with the circuit court,[4] alleging that the attorney who handled his appeal was ineffective for failing to raise ineffective assistance of trial counsel claims. The circuit court dismissed this motion for exceeding the local rule on page length limit. Two days later, Starks filed a motion with the circuit court to vacate his assessed DNA surcharge pursuant to State v. Cherry, 2008 WI App 80, 312 Wis. 2d 203, 752 N.W.2d 393 (henceforth "Cherry motion"). This motion was denied as untimely. Starks then refiled his original § 974.06 motion with the circuit court, this time within the page limit requirement. The circuit court rejected Starks's motion on the merits and denied his request for an evidentiary hearing, finding that he had not set forth a viable claim for relief.

¶3 The court of appeals affirmed the circuit court, although on different grounds. State v. Starks, No. 2010AP425, unpublished slip op. (Wis. Ct. App. June 14, 2011) (Starks II). It held that Starks's second Wis. Stat. § 974.06 motion was

---

[2] Wisconsin Stat. § 974.06 sets forth a procedure for a defendant to collaterally attack his conviction. A collateral attack is "[a]n attack on a judgment in a proceeding other than a direct appeal . . . ." Black's Law Dictionary 298 (9th ed. 2009).

[3] All subsequent references to the Wisconsin Statutes are to the 2011-12 version.

[4] The Honorable Kevin E. Martens, presiding.

procedurally barred because Starks could have, but did not, raise his ineffective assistance of counsel arguments in his Cherry motion. Starks II, No. 2010AP425, ¶6.

¶4 At the outset we note that there is a procedural problem in this case. Starks's Wis. Stat. § 974.06 motion, which was filed with the circuit court, alleged ineffective assistance of postconviction counsel. However, the attorney who represented him after his conviction did not file any postconviction motions and instead pursued a direct appeal. He was thus not Starks's postconviction counsel but was rather his appellate counsel. This is significant because claims of ineffective assistance of appellate counsel must be filed in the form of a petition for a writ of habeas corpus with the court of appeals. State v. Knight, 168 Wis. 2d 509, 520, 484 N.W.2d 540 (1992). By bringing his claim in the circuit court, Starks pursued his case in the wrong forum. However, because the erroneous filing deprived the circuit court of competency rather than jurisdiction, our review of his case is appropriate.

¶5 Three issues are presented in this case. The first is whether a Cherry motion to vacate a DNA surcharge is considered a "prior motion" under § 974.06(4), such that a defendant is required to raise postconviction ineffective assistance of counsel arguments in his Cherry motion. The second issue we address is the appropriate pleading standard a court must utilize when a defendant alleges in a petition for writ of habeas corpus that his appellate counsel was ineffective for failing to raise certain arguments. Finally, we must determine

3

whether Starks received ineffective assistance of appellate counsel.

¶6 With respect to the Cherry motion issue, we hold that because sentence modification is a distinct procedure from Wis. Stat. § 974.06 motions, a defendant is not required to shoehorn ineffective assistance of postconviction counsel arguments into a Cherry motion. As to the second issue, the proper pleading standard, we hold that a defendant who argues in a habeas petition that he received ineffective assistance of appellate counsel because certain arguments were not raised must demonstrate that the claims he believes should have been raised on appeal were "clearly stronger" than the claims that were raised. On the third and final question of whether Starks received ineffective assistance of appellate counsel, we hold that because the arguments Starks believes should have been raised were not clearly stronger than the arguments that were raised in his appeal, Starks's appellate attorney was not ineffective. We therefore affirm the court of appeals.

## I.   FACTUAL BACKGROUND

¶7 On the afternoon of March 31, 2005, Milwaukee police officers were dispatched to Lee Weddle's duplex apartment after a man in the upper unit called 911 to report that he heard a fight in the apartment beneath him followed by several gunshots.[5] When police arrived, they found Weddle lying face down in a pool of blood. He was pronounced dead shortly thereafter.

---

[5] The facts leading up to Starks's trial are taken from the criminal complaint and are not contested.

¶8 Five days after the shooting, police received an anonymous tip that Starks was the killer, and that Antwon Nellum, Wayne Rogers, and other unidentified people were present during the shooting. The Milwaukee Police Department notified its officers on April 15, 2005 that Starks was a suspect in Weddle's murder. On April 20, Nellum was arrested for a domestic violence matter and a parole violation. When questioned about Weddle's murder, Nellum answered that he could not disclose what had occurred because police could not guarantee his safety and that of his family.

¶9 Starks voluntarily spoke with police on April 21, but denied knowing Weddle, Nellum, or Rogers, or anything about the murder. Nellum was then interviewed a second time on April 22. This time he told the detectives that he had not been candid during his first interview about what occurred on March 31 because he was afraid of Starks. During the second interview Nellum said that he witnessed a fight between Starks and Weddle and that he left because he thought that Starks "was going to do something real crazy." Nellum said that as he was running out of the apartment, he heard four or five gunshots.

¶10 Nellum was released from custody on July 7, 2005, and found murdered in his car three weeks later, his vehicle riddled with two dozen bullet holes.

¶11 Rogers was arrested on a drug offense and brought into custody in August 2005. He was asked about Weddle's murder and opined, "ya'll already know who killed him," although he claimed he was asleep in the apartment when the shots were fired and

thus did not see the shooting. During a later interview, however, his story changed. At that second interview, Rogers noted that Weddle was his best friend and that he wanted to "come clean" now that he was no longer scared of what Starks would do to him if he told the truth. According to Rogers, Starks was at the apartment complaining to everyone present about comments Weddle had made regarding Starks's girlfriend. When Weddle arrived, a confrontation between Starks and Weddle ensued. Starks threw the first punch, but Weddle fought back. After Weddle pulled out a clump of Starks's hair, Starks accused him of "fight[ing] dirty." Starks was then handed a gun by Mario Mills, turned around, and shot Weddle two times. Before Rogers ran out of the apartment, he heard Weddle say, "man, you killed me." Rogers then heard three or four more shots as he was leaving the apartment. Later that day, Rogers called Mills to ask if Weddle was all right. Starks, who was with Mills, got on the phone and said, "F--- [Weddle]."

¶12 Starks and Mills were arrested and both charged with first-degree intentional homicide as a party to a crime and possession of a firearm by a felon. Pursuant to a plea agreement, Mills admitted to the crime of furnishing a firearm to a felon. Starks, however, pled not guilty as to both counts and the case was tried to a jury in December 2006. The State relied on the eyewitness accounts of three men who were present when the shooting occurred: Rogers, Devin Ward, and Carvius Williams. Rogers gave the same account of the murder at trial as he did to police investigators during his second interview.

6

Ward and Williams provided testimony very similar to Rogers', although Ward related that he left the apartment during the fight and was walking towards his car when he heard shots fired.

¶13 The State also called Starks's cousin, Trenton Gray, to the witness stand. Gray testified that on the day of Weddle's murder Starks called him "in a state of distress." As Gray recounted, "he was asking me if he can go to a place that I had been previously in my life up in North Dakota, would he be able to take refuge for some things that he believe[d] he had done." When Gray asked Starks what was going on, he said, "I don't know, cuz, I think I just murdered somebody." Gray also testified that in a later conversation between the two about the murder, Starks told him about the fight and that Mills provided the gun to Starks. Gray further testified that Starks wanted to kill Williams because Starks believed that Williams "was telling on him about the murder" at a funeral.

¶14 The jury convicted Starks of the lesser-included offense of first-degree reckless homicide and also the felon-in-possession of a firearm charge. He was sentenced to a total of 36 years in prison followed by 19 years of extended supervision.

## II. PROCEDURAL HISTORY

### A. Starks's Direct Appeal

¶15 Following his convictions, the Public Defender's Office appointed a new attorney, Robert Kagen, to represent Starks in his postconviction matters. Kagen did not file any postconviction motions with the circuit court and instead pursued a direct appeal at the court of appeals, in which he

raised four arguments: (1) the circuit court should have granted Starks's request for the lesser-included offense instruction on second-degree reckless homicide; (2) a mistrial should have been declared when a witness sequestration order was violated; (3) the circuit court erred in not dismissing the case based on the prosecution's failure to turn over information relating to the identity of "Junebug;" and (4) the evidence was inconsistent and therefore insufficient to support the verdict. In an unpublished opinion, the court of appeals rejected each of Starks's arguments and affirmed his convictions. Starks I, No. 2008AP790-CR.

¶16 On the issue of the jury instruction, Starks argued that he was entitled to an instruction on second-degree reckless homicide. As Starks pointed out, the only difference between first- and second-degree reckless homicide is that the former requires proof of the additional element of "utter disregard for human life." Compare Wis. Stat. § 940.02 with Wis. Stat. § 940.06. Starks contended that because he shot Weddle below the waist and expressed distress when he learned Weddle died, he showed at least some regard for Weddle's life. Starks I, No. 2008AP790-CR, ¶13. As Starks fled from the apartment without trying to help Weddle or calling 911, however, the court of appeals held that Starks showed "a complete lack of concern for Weddle's life," and thus was not entitled to a jury instruction on second-degree reckless homicide. Id., ¶15.

¶17 The court of appeals also rejected Starks's claim that a mistrial should have been granted when Gray and Rogers were

8

accidently transported to the courthouse in the same sheriff's van, in violation of a sequestration order. When Starks made this motion during his trial, the circuit court found that Gray and Rogers had not discussed the substance of their testimony and thus denied his request for a mistrial. The court of appeals affirmed the circuit court's findings, and held that the circuit court did not erroneously exercise its discretion in denying Starks's motion for a mistrial. Id., ¶22.

¶18 The third issue Starks raised was that the circuit court should have declared a mistrial because the prosecution failed to disclose "Junebug's" identity. Junebug was the owner of the cell phone that Gray used when he spoke to Starks on the day of the murder. In August 2006, nearly three months before trial, Starks asked the State to turn over the identity of Junebug so that the defense could examine whether any calls were made between Junebug's phone and Starks. The State turned over Gray's cell phone directory, which included Junebug's number. The prosecution submitted, though, that it did not know Junebug's identity. At trial, Gray unexpectedly revealed "Junebug" to be "Ray Gill." Starks moved for a mistrial on the grounds that, because federal agents discovered Junebug's identity in September 2006 (more than two months before Starks's trial), that knowledge was imputed to the State such that it had a duty to turn over the information. The circuit court found that, in addition to providing Junebug's phone number, the State also gave the defense documents which showed that the same phone number was registered to Gill, but apparently neither the

9

defense nor the prosecution pieced the information together to deduce that Junebug was Gill. As Starks possessed the same information as the State, the circuit court denied the motion for a mistrial. The court of appeals accepted this factual finding and concluded that the circuit court was within its discretion to deny Starks's motion. Id., ¶29.

¶19 Starks's final argument on direct appeal was that the evidence was insufficient to support his convictions because of inconsistencies in the testimony of various witnesses. For example, Starks alleged that some of the witnesses who were in the apartment at the time of the shooting gave conflicting accounts as to who left first, whether people left before or after the shooting, and whether Weddle was shot in the living room or the kitchen. Id., ¶30. In reviewing the record, the court of appeals concluded that "the jury could reasonably find Starks guilty based on the evidence presented." Id. The court noted that eyewitness testimony often produces some inconsistencies and that in any event, "[t]he State's case was strong." Id., ¶31.

¶20 After the court of appeals affirmed Starks's judgment of conviction, this court denied his petition for review.

B. Starks's Wis. Stat. § 974.06 and Cherry Motions

¶21 On December 17, 2009, Starks, acting pro se, filed a Wis. Stat. § 974.06 motion with the circuit court. Starks alleged that Kagen was ineffective for failing to raise numerous claims of ineffective assistance of trial counsel and that, consequently, he was entitled to an evidentiary hearing on his

10

claims. The circuit court dismissed the motion on January 4, 2010, because it exceeded the Milwaukee County Circuit Court local rule on page length limit. Two days later, on January 6, 2010, Starks filed a Cherry motion to vacate his DNA surcharge.[6] This motion was denied on the grounds that a motion to modify a sentence must be brought within 90 days after a sentence is imposed.[7]  See Wis. Stat. § 973.19(1)(a).  Following the dismissal of his Cherry motion, Starks refiled his § 974.06 motion on January 19, 2010, this time within the local page limit stricture.

¶22 The circuit court denied Starks's Wis. Stat. § 974.06 motion on the merits as "not set[ting] forth a viable claim for relief with regards to trial counsel's performance."  In reaching that result, the court addressed each of Starks's

---

[6] All defendants convicted of a felony are required to provide a DNA sample to the State Crime Laboratory. State v. Ziller, 2011 WI App 164, ¶9, 338 Wis. 2d 151, 807 N.W.2d 241, review denied, 2012 WI 45, 340 Wis. 2d 544, 811 N.W.2d 820. Unless the felony is sexual assault, the circuit court has discretion in deciding whether to impose a $250 DNA surcharge on the defendant. Id.  In State v. Cherry, 2008 WI App 80, ¶10, 312 Wis. 2d 203, 752 N.W.2d 393, the court of appeals held that a circuit court "must do something more than stat[e] it is imposing the DNA surcharge simply because it can."  At the very least, a circuit court must demonstrate that it went through a rational decision-making process. Id., ¶¶10-11.  A motion challenging the circuit court's discretion in imposing a DNA surcharge is thus known as a "Cherry motion."

[7] It appears from the record that Starks was challenging a DNA surcharge that was imposed in 2001 as the result of a previous conviction. The specifics of that conviction are not germane to the present dispute.

claims individually.[8] First, the circuit court dealt with Starks's contention that Kagen should have raised trial counsel's failure to investigate Junebug's identity and phone records. In his motion, Starks averred that if trial counsel had done so, he would have found that Starks and Gray did not——contrary to Gray's testimony——speak on Junebug's phone on March 31, 2005. The circuit court found that Starks's assertions were wholly conclusory, as he did not submit any phone records to substantiate his claim. Starks next averred that his trial counsel should have interviewed Dion Anderson, whom Starks says was in the same sheriff's van as Gray and Rogers and allegedly heard them conspiring to influence each other's testimony. The court found that this claim too was factually unsupported and conclusory.

¶23 Starks's third assertion was that his trial counsel should have called Stanley Daniels (his father) and Mary McCullum (his grandmother) as witnesses. Both of them submitted affidavits attached to the Wis. Stat. § 974.06 motion saying that they were at the funeral where Starks allegedly told Gray that he wanted to kill Williams because Starks believed that Williams "was telling on him about the murder." In their affidavits, Daniels and McCullum swore that they did not see Gray and Starks engaged in conversation on that day. The

---

[8] In his Wis. Stat. § 974.06 motion, Starks alleged six instances of ineffective assistance of trial counsel that Kagen should have raised. Before this court, Starks raises only four of those original claims. We therefore will not review the two claims that were dropped.

circuit held that even if they testified to that effect, there was not a "reasonable probability" of a different outcome at trial, and Starks therefore could not satisfy the prejudice prong of his ineffectiveness claim.

¶24 Finally, Starks argued that his trial counsel should have called Mills as a witness, as he swore in another affidavit attached to the motion that he did not see Starks shoot Weddle and that Rogers was the only one at the apartment with a gun. The circuit court found this claim "speculative," and noted that Mills (originally Starks's co-defendant) made this statement only after he pled no contest pursuant to a plea agreement and was sentenced for furnishing a firearm to a felon, thus undermining his credibility.

¶25 After losing at the circuit court Starks appealed. In an unpublished per curiam opinion, the court of appeals affirmed, albeit on procedural rather than substantive grounds. Starks II, No. 2010AP425. The court declined to reach the merits of Starks's appeal, holding instead that his Wis. Stat. § 974.06 motion was procedurally barred by this court's decision in State v. Escalona-Naranjo, 185 Wis. 2d 168, 517 N.W.2d 157 (1994), because Starks could have raised his ineffective assistance of counsel claims in his Cherry motion and failed to do so. Starks II, No. 2010AP425, ¶6. While ineffective assistance of counsel might explain why the issues in Starks's § 974.06 motion were not raised in his direct appeal, there was no explanation as to why Starks did not raise these issues in

13

his Cherry motion, and so, the court of appeals reasoned, Starks's § 974.06 motion was properly denied.  Id.

¶26  We granted Starks's petition for review.

### III. STANDARD OF REVIEW

¶27  The first question we must address is whether we have jurisdiction.  We apply a de novo standard to such jurisdictional questions.  See, e.g., Town of Delafield v. Winkelman, 2004 WI 17, ¶14, 269 Wis. 2d 109, 675 N.W.2d 470.

¶28  The next question in this case is: does a defendant who files a Cherry motion forfeit his right to later file a Wis. Stat. § 974.06 postconviction motion?  Assuming that Starks's § 974.06 motion was not barred by his earlier Cherry motion, we then must determine the proper pleading standard for a court to apply when a defendant alleges that his postconviction counsel was ineffective for not raising certain arguments.  These issues require us to examine § 974.06 along with Escalona-Naranjo and its offspring.  The proper interpretation of a statute and case law raises questions of law that we review de novo.  Welin v. Am. Family Mut. Ins. Co., 2006 WI 81, ¶16, 292 Wis. 2d 73, 717 N.W.2d 690.

¶29  Lastly, we address the merits of Starks's Sixth Amendment ineffective assistance of appellate counsel claim, i.e., his habeas claim.  This also presents a mixed question of fact and law.  Knight, 168 Wis. 2d at 514 n.2.  The circuit court's factual findings are given deference, but whether there was ineffective assistance of counsel is a question of law that we answer independently.  Id.

14

## IV. DISCUSSION

¶30 We first hold that Starks improperly cast his claim of ineffective assistance of appellate counsel as a claim of ineffective assistance of postconviction counsel. Because a claim of ineffective assistance of appellate counsel must be filed as a petition for a writ of habeas corpus with the court of appeals, Starks's decision to file a Wis. Stat. § 974.06 motion with the circuit court was procedurally incorrect. However, because the mistake deprived the circuit court of competency rather than jurisdiction, our review of Starks's claim is appropriate.

¶31 This is a procedurally complex case that implicates two dense and interrelated areas of law. To clarify the following sections at the outset, for purposes of Section B we treat Starks's action as a Wis. Stat. § 974.06 motion alleging ineffective assistance of postconviction counsel, because that is what he styled it as and because that is the only way we can clarify the important issue presented regarding the relationship between Cherry motions and § 974.06 motions. However, for the discussion of ineffective assistance of appellate counsel in Sections C and D, we treat Starks's action as a petition for a writ of habeas corpus filed with the court of appeals in the first instance and alleging ineffective assistance of appellate counsel. We do so because given the arguments in his claim that is what he should have filed, as he was challenging appellate and not postconviction counsel. We explain this in greater detail below. Additionally, treating it as a habeas claim for

15

ineffective assistance of appellate counsel is the only way we can clarify the important issue presented regarding the proper standard to apply to such claims, and that allows us to dispose of his action without wasting unnecessary judicial resources by delaying the ultimate resolution of his claim. Thus, our holding in Section B applies to § 974.06 motions, while our articulation of the proper pleading standard and our application of that standard in Sections C and D apply to habeas claims alleging ineffective assistance of appellate counsel. We understand that our approach is an unusual one, but we note that it is an unusual case with an unusual procedural posture, and we take the only approach that allows us to clarify the difficult legal questions presented while disposing of the matter before us.

¶32 We hold as follows: (1) filing a Cherry motion does not procedurally bar a defendant from filing a future Wis. Stat. § 974.06 motion; (2) the proper pleading standard required for a defendant averring in a habeas petition that his appellate counsel was ineffective for not raising certain arguments on appeal is that the unraised claims were "clearly stronger" than the claims that were raised; and (3) the claims of ineffective assistance of trial counsel that Starks believes should have been raised were not clearly stronger than the claims that were raised by his appellate attorney and he thus fails to meet the standard and qualify for habeas relief. Accordingly, we affirm the court of appeals.

A. The Court Has Jurisdiction and Its Review is Appropriate

16

¶33 Although no party questions our jurisdiction, we may——indeed, must——ensure that we have the power to speak on a dispute before doing so. State v. Omernik, 54 Wis. 2d 220, 222, 194 N.W.2d 617 (1972) ("[J]urisdiction is always a proper question to consider, even if we raise it sua sponte.") (footnote omitted).

¶34 In their briefs before this court, Starks and the State refer to Starks's second appointed attorney, Robert Kagen, as his "postconviction counsel." This is not an accurate description, though, of the tasks Kagen performed. Kagen did not file any postconviction motions with the circuit court and instead pursued a direct appeal with the court of appeals. He was thus Starks's "appellate" attorney.

¶35 The distinction is not merely semantical. A claim for ineffective assistance of postconviction counsel must be filed with the circuit court, either as a Wis. Stat. § 974.06 motion or as a petition for a writ of habeas corpus. State ex rel. Rothering v. McCaughtry, 205 Wis. 2d 675, 681, 556 N.W.2d 136 (Ct. App. 1996) (per curiam). A defendant arguing ineffective assistance of appellate counsel, conversely, may not seek relief under § 974.06 and must instead petition the court of appeals for a writ of habeas corpus. Knight, 168 Wis. 2d at 520. As Starks filed his claim with the circuit court, it should have been dismissed and not allowed to proceed to an appeal.

¶36 However, we will address the merits of the issues presented in this case for several reasons. First, the defendant's erroneous decision to file in circuit court rather

17

than the court of appeals deprived the former of competency to proceed, not jurisdiction. To briefly summarize, jurisdiction comes in two varieties: subject matter and personal. Subject matter jurisdiction refers to the power of a court to decide certain types of cases, while personal jurisdiction concerns a court's power to enter a judgment against a specific individual. State v. Smith, 2005 WI 104, ¶18, 283 Wis. 2d 57, 699 N.W.2d 508. Because Article VII, Section 8 of the Wisconsin Constitution states that, "[e]xcept as otherwise provided by law, the circuit court shall have original jurisdiction in all matters civil and criminal within this state," we have declared that "no circuit court is without subject matter jurisdiction to entertain actions of any nature whatsoever." Vill. of Trempealeau v. Mikrut, 2004 WI 79, ¶8, 273 Wis. 2d 76, 681 N.W.2d 190 (internal quotation marks and citation omitted). Competency, meanwhile, speaks to "the power of a court to exercise its subject matter jurisdiction in a particular case," Smith, 283 Wis. 2d 57, ¶18 (citation and internal quotation marks omitted), a power which we have described as "lesser" than that of jurisdiction itself because jurisdiction flows from the Wisconsin Constitution whereas competency is set by statute. Green Cnty. Dep't of Hum. Servs. v. H.N., 162 Wis. 2d 635, 655-56, 469 N.W.2d 845 (1991). Ergo, "the failure to comply with any statutory mandate" goes to competence, not jurisdiction. Id. at 656.

¶37 In this case, Starks miscast his claim of ineffective assistance of appellate counsel as one of ineffective assistance

18

of postconviction counsel and thus erroneously filed a Wis. Stat. § 974.06 motion with the circuit court. But as we held in Knight, § 974.06 does not provide a mechanism for ineffective assistance of appellate counsel claims. 168 Wis. 2d at 520. Rather, those claims must be raised initially with the court of appeals via a petition for a writ of habeas corpus. Id. Because Starks did not follow the proper statutory procedure, his error is better classified as depriving the circuit court of competency rather than jurisdiction. Furthermore, Knight's division of judicial labor was based on a pragmatic assessment of the "institutional capabilities of trial and appellate courts," an assessment that goes to competence rather than jurisdiction. Id. at 517, 520.

¶38 Unlike jurisdictional defects, competency issues must be raised at the circuit court or they are deemed forfeited. Mikrut, 273 Wis. 2d 76, ¶30. Here, there is no evidence in the record that the State challenged the circuit court's competency when Starks filed his Wis. Stat. § 974.06 motions. Additionally, the question of whether Starks followed the proper procedure has not been briefed before this court. See State v. Johnson, 153 Wis. 2d 121, 124, 449 N.W.2d 845 (1990) ("This court will not consider the issues respondent wishes to have considered unless they are asserted in the brief and fully discussed in that brief to this court."). In sum, it would be improper for the court to dismiss the case solely because Starks erred when he chose the wrong forum for his initial filing.

19

¶39 We are also mindful of prudential concerns and the interests of judicial economy. If we were to dismiss this case for want of jurisdiction, presumably Starks would simply refile his current claim with the court of appeals, deleting the word "postconviction" and replacing it with "appellate." This case, however, has already been before the court of appeals. Additionally, this court is as institutionally well-suited to assess the effectiveness of an appellate attorney as the court of appeals is, the issues are fully briefed and argued, and their resolution will assist attorneys, defendants, and courts in a heavily-litigated area of law going forward. Cf. Hull v. State Farm Mut. Auto Ins. Co., 222 Wis. 2d 627, 640 n.7, 586 N.W.2d 863 (1998) (noting that where one issue may be dispositive the court may still "consider additional issues which have been fully briefed and are likely to recur" if resolution of those issues will improve judicial economy and provide guidance to lower courts and litigants) (citations omitted); People v. Feliciano, 950 N.E.2d 91, 95 (N.Y. 2011) (observing that "appellate courts are uniquely suited to evaluate what [constitutes] meaningful [representation] in their own arena.") (internal quotation marks, brackets, and citation omitted).

¶40 Having settled the jurisdictional question, we turn to the disputed issues.

### B. A Cherry Motion Does Not Count as a Prior Motion Under Wis. Stat. § 974.06(4) and Escalona-Naranjo

#### 1. Background

20

¶41 The Wis. Stat. § 974.06 postconviction procedure was enacted in 1969 and was "designed to replace habeas corpus as the primary method in which a defendant can attack his conviction after the time for appeal has expired." Howard B. Eisenberg, Post-Conviction Remedies in the 1970's, 56 Marq. L. Rev. 69, 79 (1972) (footnote omitted). A defendant may file a § 974.06 motion only after he has "exhausted his direct remedies[,] which consist of a motion for a new trial and [an] appeal." Peterson v. State, 54 Wis. 2d 370, 381, 195 N.W.2d 837 (1972). Once an imprisoned defendant has pursued all his direct remedies, though, § 974.06(1) allows him to move to vacate, set aside, or correct his sentence if he contends that: (1) his sentence violates the U.S. or Wisconsin Constitution; (2) the court imposing the sentence lacked jurisdiction; or (3) his sentence exceeded the maximum time set by law or is otherwise subject to collateral attack. State v. Allen, 2010 WI 89, ¶22, 328 Wis. 2d 1, 786 N.W.2d 124. A § 974.06 motion "is a part of the original criminal action, is not a separate proceeding and may be made at any time." § 974.06(2). Section 974.06 is therefore meant to supplement a criminal defendant's standard appellate and postconviction remedies.

¶42 A defendant's ability to seek relief under Wis. Stat. § 974.06 is not unlimited, though. Section 974.06(4) provides that:

> All grounds for relief available to a person under this section must be raised in his or her original, supplemental or amended motion. Any ground finally adjudicated or not so raised, or knowingly,

voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the person has taken to secure relief may not be the basis for a subsequent motion, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental or amended motion.

¶43 The language in this subsection was discussed and analyzed in the seminal Escalona-Naranjo case. There, the defendant was convicted of multiple drug charges. Escalona-Naranjo, 185 Wis. 2d at 173-74. After he was sentenced, Escalona-Naranjo sought postconviction relief in the form of a new trial, a competency redetermination, and resentencing. Id. at 174. The circuit court denied his motion and the court of appeals affirmed. Id. at 174-75. Escalona-Naranjo then filed a Wis. Stat. § 974.06 motion asserting ineffective assistance of trial counsel. Id. at 175. The circuit court summarily dismissed the motion, concluding that Escalona-Naranjo was merely regurgitating issues that had previously been raised in his postconviction motion and appeal. Id. The court of appeals certified the case to this court, stating that even though Escalona-Naranjo may have forfeited certain evidentiary issues by not objecting at trial, his § 974.06 motion may have raised new issues not decided on direct appeal.[9] Id.

---

[9] The court of appeals and this court used the term "waiver," but "forfeiture" is more accurate because "a mere failure to object constitutes a forfeiture of the right on appellate review." State v. Ndina, 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612.

22

¶44 Escalona-Naranjo argued before this court that his failure to raise ineffective assistance of trial counsel in his motion for a new trial or on direct appeal did not preclude him from raising it in a subsequent Wis. Stat. § 974.06 motion because his claim was based on a constitutional right. Id. at 180. In our decision, we began by overruling our own precedent in Bergenthal v. State, 72 Wis. 2d 740, 748, 242 N.W.2d 199 (1976), which held that a court must always consider constitutional claims in a § 974.06 motion, even those that were forfeited on direct appeal. Escalona-Naranjo, 185 Wis. 2d at 181. We clarified that a defendant may not raise an issue in his § 974.06 motion that was finally adjudicated, waived, or forfeited, unless he can provide a "sufficient reason" for why the issue was not raised in the "original, supplemental or amended motion." Id. at 181-82 (quoting language from § 974.06(4)) (footnote omitted).

¶45 As we said in Escalona-Naranjo, "[w]e need finality in our litigation." 185 Wis. 2d at 185. A defendant may not raise some constitutional issues on direct appeal and strategically wait a few years to raise additional ones. Id. Rather, all constitutional issues should be part of the original proceeding, barring a "sufficient reason" for not raising them. Id. at 185-86.

### 2. A Cherry Motion is a Distinct Procedure From a Wis. Stat. § 974.06 Motion

¶46 The first issue presented in this case is whether Starks's January 6, 2010 motion to vacate his DNA surcharge,

23

i.e., his Cherry motion, counted as a prior motion under Wis. Stat. § 974.06(4) and Escalona-Naranjo such that his refiled § 974.06 motion of January 19 was procedurally barred and required dismissal. While the court of appeals concluded that Starks's Cherry motion prohibited him from refiling his § 974.06 motion, our analysis of the interrelationship between the criminal appellate and postconviction statutes, as well as applicable case law, reveals that sentence modification and postconviction relief under Wis. Stat. § 974.06 are separate proceedings such that filing one does not result in a waiver of the other. In this case, that means that Starks's Cherry motion did not bar his subsequent § 974.06 motion.

¶47 We begin first by noting a concession on the part of the State. The court of appeals in this case held that Starks's Cherry motion barred his subsequent Wis. Stat. § 974.06 motion because Starks could have raised ineffective assistance of counsel in his Cherry motion. Starks II, No. 2010AP425, ¶6. The State concedes that the court of appeals relied upon an erroneous premise in reaching this conclusion, as Wis. Stat. § 974.06 is confined to constitutional and jurisdictional challenges, and Cherry motions, which cannot fairly be categorized as either, are therefore never cognizable under the statute. See State v. Nickel, 2010 WI App 161, ¶7, 330 Wis. 2d 750, 794 N.W.2d 765. Consequently, the State reasons, a tardy Cherry motion cannot count as a prior § 974.06 motion within the meaning of Escalona-Naranjo because a Cherry motion, even when timely submitted, cannot be filed pursuant to that statute in

24

the first place.[10] However, the State asserts that a defendant who files a timely Cherry motion would waive his right to § 974.06 relief. We find this distinction meaningless and hold that a Cherry motion, standing alone, can never bar a defendant from later filing a § 974.06 motion.

¶48 Returning to the underlying issue, we start our analysis, as we must, by examining the text of the relevant statutes. See State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (statutory interpretation begins with the language of the statute). Wisconsin Stat. § 973.19(1)(a) provides that "[a] person sentenced to imprisonment . . . may, within 90 days after the sentence or order is entered, move the court to modify the sentence . . . ." As a Cherry motion is a challenge to a defendant's DNA surcharge, it is a type of sentence modification motion. See supra note 6. A defendant who files a sentence modification motion under § 973.19(1)(a) waives his right to file "an appeal or postconviction motion under [Wis. Stat. § (Rule)] 809.30(2)." Wis. Stat. § 973.19(5). Rule 809.30 is located in Subchapter III of Chapter 809, which governs criminal appellate procedure in the court of appeals. The definition section of that statute defines "postconviction relief" as "an appeal or a motion for postconviction relief in a criminal case,

---

[10] Though we are not bound by a party's concession of law, State v. St. Martin, 2011 WI 44, ¶14 n.6, 334 Wis. 2d 290, 800 N.W.2d 858, cert. denied, 565 U.S. __, 132 S. Ct. 1003 (2012), we agree with the State that the court of appeals was mistaken on this point.

other than_ an appeal, motion, or petition under . . . [Wis. Stat. §] 974.06 . . . ." Rule 809.30(1)(c) (emphasis added).

¶49 There are two noteworthy conclusions to be drawn from this statutory scheme: (1) a defendant who moves to modify his sentence pursuant to Wis. Stat. § 973.19(1)(a) renounces his right to a direct appeal and postconviction relief, and (2) a Wis. Stat. § 974.06 motion is expressly not one of those forms of relief. If the legislature wanted, it certainly could have forced a defendant to choose between filing a sentence modification motion or a § 974.06 motion. But it did not. Cf. Heritage Farms, Inc. v. Markel Ins. Co., 2009 WI 27, ¶14 n.9, 316 Wis. 2d 47, 762 N.W.2d 652 (stating the judicial presumption that the legislature means what it says and that every word excluded from a statute was excluded for a reason). Our reading of these statutes makes clear that a Cherry motion, or any sentence modification motion, plainly does not waive a defendant's right to bring a § 974.06 motion at a later date.

¶50 Further support for this interpretation is found in the statutes governing time limits in criminal appellate and postconviction matters. See Kalal, 271 Wis. 2d 633, ¶46 (permitting the court to look at the language of "surrounding or closely-related statutes" to guide its interpretation). A defendant has 20 days after his "sentencing or final adjudication" to file notice in the circuit court that he is seeking postconviction relief. Wis. Stat. § (Rule) 809.30(2)(b). As previously mentioned, a defendant seeking to modify his sentence must file a motion within 90 days

26

after the sentence or order is entered. Wis. Stat. § 973.19(1)(a). Wisconsin Stat. § 974.02(1) provides that "[a] motion for postconviction relief <u>other than under</u> [Wis. Stat. §] 974.06 . . . shall be made in the time and manner provided in [Wis. Stat. § (Rule)] 809.30." (Emphasis added). A § 974.06 motion, by contrast, "may be made at any time." § 974.06(2). This statutory setup makes manifest that sentence modification and § 974.06 motions are two separate forms of relief, such that the filing of one does not preclude the filing of the other.

¶51 In addition to being textually sound, this interpretation makes the most logical sense. Wisconsin Stat. § 974.06 was meant to supplant habeas corpus as the primary method of attacking a conviction after the time for an appeal has expired. Eisenberg, <u>Post-Conviction Remedies in the 1970's</u>, 56 Marq. L. Rev. at 79. According to the State's view, a defendant who has just been sentenced has 90 days to either: (1) make a Wis. Stat. § 974.06 argument, which is usually complex given that it involves constitutional or jurisdictional arguments, or (2) give up his right to seek a sentence modification. Given that a § 974.06 motion "may be made at any time," § 974.06(2), we find it implausible that a defendant would have to relinquish his statutorily-protected right to challenge his sentence in order to protect his future right to challenge the constitutionality of his conviction in state court. <u>See</u> <u>Kalal</u>, 271 Wis. 2d 633, ¶46 (observing that statutes are interpreted to avoid absurd or unreasonable results). This

27

incongruity reaffirms what the statutes make clear: a defendant is not required to raise § 974.06 arguments in a _Cherry_ motion.

¶52 Wisconsin case law also supports the view that Wis. Stat. § 974.06 motions and _Cherry_ motions are distinct mechanisms that do not overlap. Section 974.06 motions are limited to "matters of jurisdiction or of constitutional dimensions." _Peterson_, 54 Wis. 2d at 381 (footnote omitted). As such, "[s]ome grounds for relief are not available under § 974.06." _State v. Lo_, 2003 WI 107, ¶37, 264 Wis. 2d 1, 665 N.W.2d 756 (emphasis removed). Because of this restriction, a defendant may not make a _Cherry_ argument in his § 974.06 motion. _Nickel_, 330 Wis. 2d 750, ¶7. Another important distinction is that a _Cherry_ motion must be made before a criminal conviction becomes final, _see id._, ¶5, whereas, in contrast, a § 974.06 motion can be made only after "the time for appeal or postconviction remedy provided in Wis. Stat. § [974.02] has expired . . . ." § 974.06(1). In other words, Wisconsin precedent further bolsters our understanding of _Cherry_ motions and § 974.06 motions as wholly distinct. Having found no justification for the State's position in either the statutory text or logic, we similarly determine that the case law likewise lends no support.

¶53 For the reasons stated, Starks's _Cherry_ motion did not bar his subsequent § 974.06 motion. We turn now to the proper pleading standard for ineffective assistance of appellate counsel claims when a defendant alleges in a habeas petition

28

that appellate counsel was deficient for not making certain arguments.

### C. Pleading Standard for Ineffective Assistance of Appellate Counsel Claims in Habeas Petitions

### 1. General Principles of Ineffective Assistance of Counsel

¶54 Article I, Section 7 of the Wisconsin Constitution, and the Sixth Amendment of the United States Constitution, made applicable to the states via the Fourteenth Amendment, entitle every criminal defendant in our state to the effective assistance of counsel. State v. Domke, 2011 WI 95, ¶34, 337 Wis. 2d 268, 805 N.W.2d 364; Evitts v. Lucey, 469 U.S. 387, 394-95 (1985). This right applies to both a defendant's trial as well as his direct appeal. Evitts, 469 U.S. at 396. In order to establish a claim for ineffective assistance of counsel, the defendant must show: (1) that counsel's performance was deficient, and (2) counsel's deficiency prejudiced the defendant. State v. Balliette, 2011 WI 79, ¶21, 336 Wis. 2d 358, 805 N.W.2d 334, cert. denied, 565 U.S. __, 132 S. Ct. 825 (2011). Satisfaction of the first prong requires a showing that the defendant's attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687 (1984). In evaluating deficiency, courts indulge in every presumption that counsel was effective unless shown otherwise by the defendant. Balliette, 336 Wis. 2d 358, ¶¶27-28. Similarly, reviewing courts must be "highly deferential" when judging an

attorney's strategic decisions, Domke, 337 Wis. 2d 268, ¶36 (citation omitted), and any decision made during the course of representation is regarded as having been made for "tactical reasons" in the absence of evidence to the contrary. Yarborough v. Gentry, 540 U.S. 1, 8 (2003) (per curiam).

¶55 As to the second prong of the ineffective assistance of counsel test, prejudice occurs when the attorney's error is of such magnitude that there is a "reasonable probability" that but for the error the outcome would have been different. State v. Erickson, 227 Wis. 2d 758, 769, 569 N.W.2d 749 (1999). Stated differently, relief may be granted only where there "is a probability sufficient to undermine confidence in the outcome," i.e., there is a "substantial, not just conceivable, likelihood of a different result." Cullen v. Pinholster, 563 U.S. __, 131 S. Ct. 1388, 1403 (2011) (internal quotation marks and citations omitted).

### 2. Ineffective Assistance of Appellate Counsel

¶56 Turning to the specific issue here, the parties dispute the appropriate standard a court should use in determining whether a defendant received ineffective assistance of appellate counsel because of counsel's failure to raise certain arguments. Starks contends that all he must do to demonstrate ineffectiveness is to show that appellate counsel's performance was deficient and that it prejudiced him. The State, on the other hand, argues that Starks must also establish why the unraised claims of ineffective assistance of trial counsel were "clearly stronger" than the claims that appellate

30

counsel raised on appeal. We hold that the State has articulated the proper standard.

¶57 The United States Court of Appeals for the Seventh Circuit, in the context of a federal habeas corpus petition raising ineffective assistance of appellate counsel, has stated:

> When a claim of ineffective assistance of [appellate] counsel is based on failure to raise viable issues, the [trial] court must examine the trial record to determine whether appellate counsel failed to present significant and obvious issues on appeal. Significant issues which could have been raised should then be compared to those which were raised. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.

Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986) (emphasis added).

¶58 Fourteen years later in Smith v. Robbins, 528 U.S. 259 (2000), the United States Supreme Court adopted this "clearly stronger" standard. In that case, a California jury convicted Robbins of second-degree murder and grand theft of an automobile. Id. at 266. Robbins' appointed appellate attorney concluded that an appeal would be frivolous and filed the equivalent of a "no-merit brief" with the California Court of Appeal. Id. at 266-67. The appellate court agreed that there were no issues of arguable merit and affirmed his conviction. Id. at 267. After the California Supreme Court denied his petition for review, Robbins' state postconviction remedies were exhausted, so he proceeded to file a habeas corpus petition in federal court. Id. His habeas petition alleged (among other

31

claims) that he received ineffective assistance of appellate counsel because his appellate attorney's no-merit brief did not comply with <u>Anders v. California</u>, 386 U.S. 738, 744 (1967), which "set forth a procedure for an appellate counsel to follow in seeking permission to withdraw from the representation when he concludes that an appeal would be frivolous; that procedure includes the requirement that counsel file a brief referring to anything in the record that might arguably support the appeal." <u>Robbins</u>, 528 U.S. at 267-68 (citation omitted). The district court concluded that there were at least two issues that the appellate attorney should have raised in his no-merit brief and thus reinstated Robbins' appeal. <u>Id.</u> at 268. The Ninth Circuit affirmed. <u>Id.</u>

¶59 After granting certiorari, the U.S. Supreme Court held that when a defendant (such as Robbins) alleges that his appellate attorney was deficient for failing to file a merits brief,[11] all that a defendant must do to show deficiency is to

---

[11] When an indigent defendant is appointed an attorney to represent him on appeal, the attorney can either file a "merits brief" (sometimes called a "brief on the merits") or a "no merit brief." <u>See, e.g.</u>, <u>State ex rel. Seibert v. Macht</u>, 2001 WI 67, ¶20 n.8, 244 Wis. 2d 378, 627 N.W.2d 881. A "merits brief" is a traditional appellate brief in that it "sets out the issues to be decided, the party's position, and the arguments and authorities in support." <u>Black's Law Dictionary</u> 218 (9th ed. 2009). An attorney files a no-merit brief, however, when he "concludes that a direct appeal on behalf of the [defendant] would be frivolous and without any arguable merit within the meaning of <u>Anders v. California</u>, 386 U.S. 738 (1967)." Wis. Stat. § (Rule) 809.32(1)(a). The no-merit brief must "identify anything in the record that might arguably support the appeal and discuss the reasons why each identified issue lacks merit." Rule 809.32(1)(a).

demonstrate "that a reasonably competent attorney would have found one nonfrivolous issue warranting a merits brief . . . ." Id. at 288. However, when a defendant (such as Starks) alleges that his appellate attorney was deficient for not raising a particular claim, "it [will be] difficult to demonstrate that counsel was incompetent" because the defendant must show that "a particular nonfrivolous issue was <u>clearly stronger</u> than issues that counsel did present." Id. (emphasis added). "In both cases, however, the prejudice analysis will be the same." Id. (footnote omitted).

¶60 We now adopt this "clearly stronger" pleading standard for the deficiency prong of the <u>Strickland</u> test in Wisconsin for criminal defendants alleging in a habeas petition that they received ineffective assistance of appellate counsel due to counsel's failure to raise certain issues.[12] As we have previously noted, "[w]e need finality in our litigation." <u>Escalona-Naranjo</u>, 185 Wis. 2d at 185. We also must respect the professional judgment of postconviction attorneys in separating the wheat from the chaff. Cf. <u>Jones v. Barnes</u>, 463 U.S. 745, 753 (1983) ("A brief that raises every colorable issue runs the

---

[12] The dissent takes issue with the fact that the "clearly stronger" standard cannot be applied to every other type of ineffective assistance claim, such as the failure to investigate. See dissent, ¶99. Of course it can't. By definition, the test is limited to claims alleging the failure to raise arguments. Not every test can account for every situation. That inevitable limitation did not trouble the U.S. Supreme Court in <u>Smith v. Robbins</u>, 528 U.S. 259 (2000), and it does not trouble us here.

33

risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions.") (citation omitted). The U.S. Supreme Court has "emphasized that the right to appellate representation does not include a right to present frivolous arguments," Robbins, 528 U.S. at 272, and that, in fact, an appellate attorney has an ethical obligation not to "advance[e] frivolous or improper arguments . . . ." McCoy v. Wis. Court of Appeals, 486 U.S. 429, 435 (1988). The "clearly stronger" standard achieves these objectives while at the same time ensuring that a defendant whose appellate attorney did not raise meritorious issues may still seek habeas relief.

### 3. The Dissent Misinterprets United States Supreme Court Precedent

¶61 We are a bit mystified by the dissent's argument that we are overlooking the U.S. Supreme Court's decision in Cullen, specifically the language which states that "strict rules" are not appropriate in evaluating ineffective assistance of counsel claims. Dissent, ¶¶77, 89 (citing Cullen, 131 S. Ct. at 1406). Pace Justice Bradley, she is disfiguring the meaning of this quote by taking it grossly out of context. In Cullen, the defendant Pinholster was convicted of first-degree murder and sentenced to death by a California state jury. 131 S. Ct. at 1396-97. On mandatory appeal, the California Supreme Court affirmed the judgment. Id. at 1396. Pinholster subsequently filed a habeas corpus petition in state court, alleging that his trial counsel was ineffective for failing to adequately investigate mitigating evidence at the penalty phase of

34

Pinholster's murder trial.  Id.  The California Supreme Court summarily dismissed the petition as meritless.  Id.  Pinholster then moved for federal habeas relief.  Id.  The district court granted Pinholster's petition, finding that his attorney failed to adequately "investigate and present mitigation evidence at the penalty hearing."  Id. at 1397 (internal quotation marks and citation omitted).  A three-judge panel of the Ninth Circuit reversed, but the en banc panel reinstated the district court's decision to grant Pinholster habeas relief.  Id.

¶62  One of the issues the Supreme Court granted review on was "whether the Court of Appeals properly granted Pinholster habeas relief on his claim of penalty-phase ineffective assistance of counsel."  Id. at 1398.  In reviewing the en banc decision, the Supreme Court observed that the Ninth Circuit "drew from [our] cases a constitutional duty to investigate . . . and the principle that it is prima facie ineffective assistance for counsel to abandon their investigation of the petitioner's background after having acquired only rudimentary knowledge of his history from a narrow set of sources."  Id. at 1406 (internal quotation marks, citations, and alterations omitted).  In reversing the Court of Appeals the Supreme Court said, "[b]eyond the general requirements of reasonableness, specific guidelines are not appropriate."  Id. (internal quotation marks and citation omitted).  In other words, the Supreme Court was not talking about pleading standards, as Justice Bradley believes, but rather the Ninth Circuit's incorrect conclusion that Strickland

35

imposes a constitutional duty upon counsel to investigate.  See id. at 1406-07.

¶63  What is even more puzzling about the dissent's point is that Justice Thomas was the author of both Cullen and Robbins, the opinion that adopted the "clearly stronger" standard.  In fact, Robbins cited to the Seventh Circuit's opinion in Gray as support for the "clearly stronger" standard. Robbins, 528 U.S. at 288.  Pinholster does not even mention Robbins, let alone suggest that the decision is no longer good law.  We assume the Supreme Court chooses its words and the cases it cites to carefully, and is aware of its own recently-decided precedent.

¶64  Out of convenience, the dissent elects to simply ignore Robbins' reasoning and import, mentioning this highly relevant case only twice in passing.  See dissent, ¶¶86, 96.  It suits the dissent more to recite broad language from Strickland, a case that bears no factual similarity to the present one, rather than to deal meaningfully with Robbins, a case directly on point and one in which the U.S. Supreme Court explicitly approved of the "clearly stronger" standard in the specific legal context at issue here.  See, e.g., Robbins, 528 U.S. at 287-88 (making clear that the "clearly stronger" standard is an iteration of Strickland's deficiency prong).  The dissent finds many words to criticize our analysis but can articulate none to explain its departure from clear U.S. Supreme Court precedent.

¶65 We now turn to whether the claims Starks believes should have been raised on appeal are "clearly stronger" than the claims he did raise.

D. Assessing the Merits of Starks's Ineffective Assistance of Appellate Counsel Habeas Claims

¶66 As we have mentioned, Attorney Kagen argued on direct appeal that: (1) the circuit court should have granted Starks's request for the lesser-included offense instruction on second-degree reckless homicide; (2) a mistrial should have been declared when a witness sequestration order was violated; (3) the circuit court erred in not dismissing the case based on the prosecution's failure to turn over information relating to the identity of "Junebug;" and (4) the evidence was inconsistent and therefore insufficient to support the verdict. For Starks to succeed on Strickland's deficiency prong with his claim that Kagen rendered ineffective assistance of appellate counsel, he must first show that the claims of ineffective assistance of trial counsel that were not argued were "clearly stronger" than the arguments Kagen did pursue.

¶67 Starks first contends that his trial counsel was deficient for not calling Mario Mills as a witness. Mills, recall, was originally Starks's co-defendant, as both were charged with first-degree intentional homicide as a party to a crime and possession of a firearm by a felon. Mills accepted a plea bargain that reduced his charge to furnishing a firearm to a felon. Starks believes that had Mills been called as a witness, he could have undermined the State's case and presented

a different account of what happened the afternoon of the murder.[13]  His support for this?  An affidavit signed by Mills after he took the plea bargain and after Starks was convicted, claiming, "I never seen Tramell Starks shoot anyone."  Given that Mills was charged with the same crimes as Starks and only came out with this version of events after he took a plea bargain, the circuit court was correct to dismiss this statement as unreliable.

¶68 The second purported instance of ineffective assistance of trial counsel that Starks points to is his attorney's failure to call Dion Anderson as a witness.  Anderson was in a sheriff's van with two of the State's key witnesses——Trenton Gray and Wayne Rogers——who were supposed to be separated from one another per a court sequestration order.  After Anderson was contacted by a private investigator hired by Starks, Anderson wrote back reporting that he heard how Gray and Rogers "put everything together" to convict Starks.

¶69 When the issue of the violated sequestration order came up at trial, the circuit court found——based on answers Gray

---

[13] The State asserts that the primary reason Mills was not called as a witness at Starks's trial was because Mills "unexpectedly took a plea on the morning of Starks's trial, but trial counsel did not have enough time at the eleventh-hour to interview Mills, or anyone whose testimony was related to Mills' statements."  This is not quite accurate.  It is true that Starks and Mills were both set to stand trial on August 21, 2006, and that Mills did take a plea that day.  However, Starks's trial was rescheduled to December 4, giving Starks's attorney three-and-a-half months to interview Mills should he have so chosen.

gave during his cross-examination——that he and Rogers did not talk about the substance of their testimony.  This finding was upheld by the court of appeals in Starks's direct appeal. Starks I, No. 2008AP790-CR, ¶¶19-22.  Starks is thus asking us to give him an opportunity to relitigate a dispositive factual finding that has already been adjudicated, and we are not permitted to do so on collateral review.  See Allen, 328 Wis. 2d 1, ¶79.

¶70 Starks's third contention is that his trial attorney should have investigated the phone records of Ray Gill ("Junebug").  At trial, Gray testified that he received a call from Starks on the day of the murder, but that he called him back using Gill's phone because, "I didn't trust my telephone for the simple fact that I use it in my legitimate business as well as my illegitimate business.  Mr. Starks is important to me, so, no, I didn't want to talk to him on my illegitimate phone."  Starks asserts that Gill's phone records would reveal that no call was made between him and Gray.  However, as the circuit court noted, Starks did not actually produce any phone records to support the veracity of this claim.  Much like Starks's second proposed instance of ineffective assistance of counsel, this is nothing more than a conclusory allegation.

¶71 Finally, Starks believes his trial attorney was deficient for not calling his father and grandmother——Stanley Daniels and Mary McCullum——to testify.  Daniels and McCullum were present at the funeral where Gray testified that Starks told him he wanted to murder Carvius Williams for talking to the

39

police about Starks's involvement in Weddle's death. Signed affidavits by Daniels and McCullum stated that they did not see Starks and Gray have a conversation at the funeral. Starks believes their testimony would have undercut Gray's credibility.

¶72 Had Daniels and McCullum testified, it is possible the jury would have been less likely to believe Gray's testimony. But it is also possible that a jury would not have believed them, especially given their familial connection to Starks. Furthermore, the jury may have doubted their omnipresence. As the circuit court nicely put it, "[t]here is not a reasonable probability that the jury would have found it reasonable to believe that both the defendant's grandmother and his father had their eyes on the defendant's every single movement on the day of the funeral." It is easy to imagine why Starks's trial counsel opted not, for strategic reasons, to put Daniels and McCullum on the stand. See Domke, 337 Wis. 2d 268, ¶49 ("This court will not second-guess a reasonable trial strategy . . . ."). Starks's final argument therefore fails as well.

¶73 In short, the instances of ineffective assistance of trial counsel that Starks believes Kagen should have argued on appeal are either unsubstantiated, unpersuasive, or previously adjudicated. They are in no way "clearly stronger" than the arguments Kagen raised. We therefore hold that Kagen was not deficient for failing to make these arguments, and thus need not decide whether he was prejudiced. See Strickland, 466 U.S. at 697 (if a defendant cannot satisfy one prong of the

ineffectiveness test, a court need not reach the other). As Starks did not receive ineffective assistance of appellate counsel, we affirm his conviction.

## V. CONCLUSION

¶74 We hold that as sentence modification is a distinct procedure from Wis. Stat. § 974.06 motions, a defendant is not required to shoehorn ineffective assistance of counsel arguments into a Cherry motion. On the question of the proper pleading standard, we hold that a defendant who argues he received ineffective assistance of appellate counsel in a habeas petition because certain arguments were not raised must show why the claims he believes should have been raised on appeal were "clearly stronger" than the claims that were raised.

¶75 Finally, we conclude that because the arguments about trial counsel's ineffectiveness are not clearly stronger than the arguments Starks made on direct appeal, Starks did not receive ineffective assistance of appellate counsel and is not entitled to habeas relief. The decision of the court of appeals is therefore affirmed.

*By the Court.*—The decision of the court of appeals is affirmed.

¶76 ANN WALSH BRADLEY, J. *(dissenting).* I agree with the majority that "Starks's Cherry motion did not bar his subsequent § 974.06 motion," majority op., ¶53. However, I part ways when it adopts a new bright-line test for evaluating claims of deficient performance of counsel.[1]

¶77 A recent United States Supreme Court decision addressing ineffective assistance of counsel claims under Strickland v. Washington, 466 U.S. 668 (1984) declined to adopt bright-line standards for evaluating deficiency. Cullen v. Pinholster, 131 S. Ct. 1388, 1406 (2011). It cautioned against "attributing strict rules" to its jurisprudence in this area of the law. Id.

¶78 Nevertheless, the majority today ignores the admonition of the United States Supreme Court and adopts a new threshold bright-line test for evaluating deficient performance. It articulates the new test as follows: "a defendant who argues in a habeas petition that he received ineffective assistance of appellate counsel because certain arguments were not raised must demonstrate that the claims he believes should have been raised on appeal were 'clearly stronger' than the claims that were raised." Majority op., ¶6.

¶79 The new bright-line test adopted by the majority today is inconsistent with the Strickland test for deficient performance, which requires an evaluation of reasonableness

---

[1] I also part ways with the majority when it declares, without the benefit of briefing or argument, that it has jurisdiction to determine the issues presented by the parties.

1

under the totality of the circumstances. Although the "clearly stronger" test is a circumstance to consider under the totality of the circumstances and may be a useful tool in determining deficient performance, the majority's bright-line, threshold application of that test has been rejected by other state supreme courts and is unsupported by our own precedent.

¶80 Additionally, the analysis employed by the majority in applying its new test is unworkable because it cannot practically be applied in many circumstances. The overarching, unworkable scope of this test is apparent in the haphazard way the majority analyzes Starks's claims in this case.

¶81 Accordingly, I respectfully dissent.

I

¶82 In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court fashioned the quintessential test for deficient performance of counsel: whether counsel acted unreasonably under the totality of the circumstances.[2]

---

[2] At the outset, the majority recognizes a potential problem with the court's jurisdiction in this case. Majority op., ¶4. It acknowledges that because Starks "improperly filed his claim with the circuit court, it should have been dismissed and not allowed to proceed to an appeal." Id., ¶35.

Nevertheless, essentially for reasons of judicial economy, the majority decides to address the merits of the issues and in a cursory fashion concludes Starks's decision to file in the wrong court was a matter of competence, not jurisdiction. Id., ¶¶36-40.

It is unclear whether the majority is correct in its cursory conclusion that the erroneous filing implicates competence rather than jurisdiction. The issue was neither raised nor briefed by the parties.

2

<u>Strickland</u>, 466 U.S. at 688 ("the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances"). Although the majority pays lip service to <u>Strickland</u> and decisions of this court applying <u>Strickland</u>, its analysis ignores the <u>Strickland</u> test. Majority op., ¶54.

---

Article VII, Section 8 of the Wisconsin constitution, entitled "Circuit court; jurisdiction" provides that "[e]xcept <u>as otherwise provided by law</u>, the circuit court shall have original jurisdiction in all matters civil and criminal[]." (emphasis added.) In <u>State v. Knight</u>, a unanimous decision of this court, we concluded that the law provided an ineffective assistance of appellate counsel claim must be brought in the court of appeals. 168 Wis. 2d 509, 522, 484 N.W.2d 540 (1992) ("We conclude that sec. 974.06 does not authorize a circuit court to resolve claims of ineffective assistance of appellate counsel.").

Because <u>Knight</u> stated that the circuit court is not "authorize[d]" to hear a motion addressing ineffective assistance of appellate counsel, it arguably falls within the constitutional phrase "[e]xcept as otherwise provided by law." The analysis of the court of appeals in <u>State ex rel. Rothering v. McCaughtry</u>, 205 Wis. 2d 675, 677, 556 N.W.2d 136 (Ct. App. 1996) supports that the <u>Knight</u> court discussed "jurisdiction," not competency. Therefore, the circuit court may have lacked jurisdiction to hear Starks's motion.

If the circuit court lacked jurisdiction, its order addressing the merits of Starks's motion was a nullity. If its order was a nullity, then likewise any decision addressing the merits by the court of appeals and by this court are likewise nullities and would have no precedential value.

Accordingly, I determine that supplemental briefs should be ordered addressing this issue. Because jurisdiction cannot be conferred by mistake or stipulation, this issue is potentially dispositive. <u>Lassa v. Rongstad</u>, 2006 WI 105, ¶34, 294 Wis. 2d 187, 718 N.W.2d 673. The majority should not resolve such an important question seemingly unfettered by the lack of argument or analysis, the words of the constitution, and our prior unanimous precedent.

¶83 Instead, the majority introduces a new, bright-line test inconsistent with the test set out in Strickland. Rather than following the very cases and statutes it cites, it introduces a new threshold test: "a defendant who argues he received ineffective assistance of appellate counsel in a habeas petition because certain arguments were not raised must show why the claims he believes should have been raised on appeal were 'clearly stronger' than the claims that were raised." Majority op., ¶74.

¶84 This new standard is wholly inconsistent with Strickland, which requires an evaluation of reasonableness under the totality of the circumstances. 466 U.S. at 695. A bright-line standard is not only incompatible with Strickland, it is its antithesis.

¶85 The Sixth Amendment to the United States Constitution guarantees that an accused shall "have the Assistance of Counsel for his defence." The United States Supreme Court has additionally recognized that the constitutional right to counsel is "the right to the effective assistance of counsel." Strickland, 466 U.S. at 686 (quoting McMann v. Richardson, 397 U.S. 759, 771 n. 14 (1970)).

¶86 The Strickland test for ineffective assistance of counsel remains the lodestar of all ineffective assistance determinations to this day. The United States Supreme Court set forth two elements to establish ineffective assistance of counsel: deficient performance and prejudice. Id. at 687; see also Smith v. Robbins, 528 U.S. 259, 285 (2000) ("the proper

4

standard for evaluating Robbins' claim that appellate counsel was ineffective in neglecting to file a merits brief is that enunciated in Strickland . . . .").

¶87 To establish deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms. Strickland, 466 U.S. at 687-88. Judicial scrutiny of counsel's performance must be "highly deferential." Id. at 689. Courts are to determine whether "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." Id. at 690.

¶88 Evaluating whether one argument is "clearly stronger" than another is not the test for ineffective assistance of appellate counsel. Rather it is a factor to consider when applying the Strickland test.

¶89 A recent United States Supreme Court decision addressing ineffective assistance of counsel claims under Strickland declined to adopt bright-line standards for evaluating deficiency, and cautioned against "attributing strict rules" to its jurisprudence in this area of the law. Cullen, 131 S. Ct. at 1406 ("[b]eyond the general requirement of reasonableness, 'specific guidelines are not appropriate. [Citing Strickland at 688]'").

¶90 Other decisions of the United States Supreme Court have further emphasized the highly individualized nature of the task of evaluating whether counsel rendered constitutionally effective assistance. See, e.g., Williams v. Taylor, 529 U.S.

5

362, 391 (2000) ("the <u>Strickland</u> test 'of necessity requires a case-by-case examination of the evidence[].'"); <u>Premo v. Moore</u>, 131 S. Ct. 733, 742 (2011) (the deficiency inquiry varies at different stages of the case). A bright-line standard for evaluating deficiency is contrary to this United States Supreme Court case law.

¶91 Not only is the majority's bright-line test for deficient performance inconsistent with <u>Strickland</u>'s test for deficient performance, it overstates the case from which it borrows the phrase "clearly stronger." In <u>Gray v. Greer</u>, 800 F.2d 644 (7th Cir. 1985), the defendant alleged that his appellate counsel was ineffective. The district court concluded that appellate counsel was not ineffective based solely on review of the defendant's brief on direct appeal. <u>Id.</u> at 645-646.

¶92 The Seventh Circuit concluded that when a claim of ineffective assistance of counsel is based on failure to raise viable issues, the district court is to "examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal." <u>Id.</u> at 646. It provided guidance as to how to examine the trial record, stating that "[s]ignificant issues that could have been raised should then be compared to those which were raised." <u>Id.</u> Furthermore, the court observed that "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." <u>Id.</u> (emphasis added).

6

¶93 The majority reads <u>Gray</u> in an overbroad manner. Although comparing the arguments and determining that ignored claims are clearly stronger than those presented is certainly one way of showing deficiency, it is not the only way.[3]

¶94 Other state supreme courts have emphasized the word "generally" in <u>Gray</u> and have specifically declined to adopt the bright-line "clearly stronger" test that is embraced by the majority today. They recognize that a bright-line test is too rigid, noting that not even <u>Gray</u> espoused the "clearly stronger" standard as the only way to prove deficient performance. <u>See</u> <u>Shorter v. Waters</u>, 571 S.E.2d 373, 376 (Ga. 2002) (the clearly stronger test does not always apply because "[s]ituations may arise when every error enumerated by appellate counsel on appeal presented a strong, nonfrivolous issue but counsel's performance was nonetheless deficient because counsel's tactical decision not to enumerate one rejected error was an unreasonable one which only an incompetent attorney would adopt."); <u>Carpenter v. State of Tennessee</u>, 126 S.W.3d 879, 888 (Tenn. 2004) (discussing <u>Gray</u> and declining to "hold that the <u>only</u> way to show deficient

---

[3] For example, another way to show deficient performance includes showing that the failure to raise an issue was unreasonable because it was due to oversight rather than an intentional, reasoned strategy. <u>Wiggins v. Smith</u>, 539 U.S. 510, 534 (2003). Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." <u>Strickland v. Washington</u>, 466 U.S. 668, 690-691 (1984). If counsel chooses issues based on less than a full investigation, the deficiency determination turns on whether the failure to investigate was itself unreasonable, not on whether that attorney would have chosen to raise the issues discovered by such an investigation. <u>Wiggins v. Smith</u>, 539 U.S. at 522-523.

7

performance of appellate counsel in a case involving the omission of an issue on appeal is to establish that the omitted issue was clearly stronger than the issues that counsel did present on appeal." (Emphasis in original.)).

¶95 Furthermore, the bright-line standard is unsupported by prior precedent of this court. This court has long recognized Strickland as providing the framework for evaluating claims of ineffective assistance of counsel. State v. Moffett, 147 Wis. 2d 343, 352, 433 N.W.2d 572 (1989) ("A claim of ineffective assistance of counsel brought under the sixth amendment of the United States Constitution must meet the test articulated in Strickland v. Washington . . . and followed by this court in State v. Pitsch . . . and State v. Johnson . . . ." (Citations omitted.)).

¶96 Recently, in a case involving a § 974.06 motion based on deficiency of postconviction counsel, this court recognized again that Strickland guides this court's analysis of ineffective assistance of counsel, and allows for various ways to show deficient performance. State v. Balliette, 2011 WI 79, ¶64, 336 Wis. 2d 358, 805 N.W.2d 334 ("For example, Balliette could have alleged such deficiency by showing that counsel's performance was 'objectively unreasonable . . . in failing to find arguable issues to appeal,' as the Supreme Court described it in Smith [v. Robbins].").

¶97 This recent decision, as well as the substantial body of Wisconsin case law interpreting Strickland, shows that this court has ably evaluated claims of ineffectiveness of counsel

8

without inventing a bright-line standard. The majority's new threshold bright-line test is inconsistent with the totality of the circumstances test set forth by the United States Supreme Court, and as interpreted by other states and prior decisions of this court.

II

¶98 When the majority turns to evaluate the merits of Starks's claims, it is apparent that its new "clearly stronger" test is unworkable as a bright-line test because it cannot be practically applied in many circumstances. Although claims of ineffective assistance of appellate counsel may often require a court to weigh the relative merits of claims that were raised and those that were not raised, that will not always be the case.

¶99 The majority's "clearly stronger" test has no practical application in many circumstances. For example, under Strickland, counsel has a duty to "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691. Accordingly, a court does not need to determine whether a claim that was not raised is "clearly stronger" than those that were raised when the allegation of ineffectiveness is premised upon a failure to adequately investigate a claim in the first place.

¶100 Likewise, a failure to raise a claim may simply be due to oversight rather than an intentional strategy. Wiggins v. Smith, 539 U.S. 510, 534 (2003). Sometimes counsel simply forgets to raise claims, irrespective of any evaluation of their

9

relative strength. A court does not need to determine whether a claim that was not raised is "clearly stronger" than those that were raised when counsel acts unreasonably due to oversight.

¶101 Even if counsel properly identifies an issue that is the strongest issue available, his performance may also be considered deficient when the claim is not adequately raised—such as when there is a failure to conduct research sufficient to support the claim, a failure to present necessary evidence, or a failure to adequately argue the claim. A court does not need to determine whether a claim that was not raised is "clearly stronger" than those that were raised when the focus of the inquiry is exclusively on the claim that was raised inadequately.

¶102 As the above examples illustrate, the majority's "clearly stronger" test is simply inapplicable in many circumstances. Yet, its holding appears to premise deficient performance on evaluating the relative strength of the claims raised and not raised regardless of the reasonableness under the totality of the circumstances. As a practical matter, such a test cannot always apply whenever a defendant "argues he received ineffective assistance of appellate counsel in a habeas petition because certain arguments were not raised." Majority op., ¶74.

¶103 The overarching, unworkable scope of the majority's new bright-line test is apparent in the haphazard way it evaluates Starks's motion in this case. After paying lip service to Strickland and other cases setting forth a standard

10

for ineffectiveness, majority op., ¶¶54-55, the only test it really applies is its "clearly stronger" test. Id., ¶73 (the claims raised by Starks "are in no way "clearly stronger" than the arguments Kagen raised.").

¶104 Instead of evaluating the underlying allegations of ineffectiveness of trial counsel on their merits, the majority simply dismisses them out of hand as "unsubstantiated, unpersuasive, or previously adjudicated." Majority op., ¶73. Because it concludes that the underlying claims of ineffective trial counsel must fail——even though it has not really evaluated the underlying ineffectiveness claims under Strickland——the majority concludes that the claims not raised are not "clearly stronger" and no deficient performance exists. Majority op., ¶73.

¶105 Additionally, the majority's analysis disregards or dismisses the facts alleged in Starks's motion. In one instance, it evaluates credibility by deriding allegations advanced in the motion as "unreliable." Majority op., ¶67. By making determinations of reliability and credibility, the

11

majority skips an evidentiary hearing where those very issues should be determined.[4]

¶106 Later, it speculates that it is "easy to imagine why Starks's trial counsel opted not, for strategic reasons," to put two potential witnesses on the stand. Majority op., ¶72. The majority cannot know what reason trial counsel had, if any, for failing to call two witnesses. Those reasons are to be elicited at an evidentiary hearing, not in reviewing an initial motion.

¶107 This type of a half-hearted analysis is not a reasoned application of constitutional standards. It further illustrates the overarching, unworkable nature of the bright-line test that is adopted by the majority today.

¶108 Accordingly, for the reasons set forth above, I respectfully dissent.

¶109 I am authorized to state that CHIEF JUSTICE SHIRLEY S. ABRAHAMSON and JUSTICE N. PATRICK CROOKS join this dissent.

---

[4] The majority's determination of reliability can be understood as a determination of credibility. Credibility determinations are a matter for the circuit court at an evidentiary hearing, not in reviewing an initial motion. See First Nat. Bank of Appleton v. Nennig, 92 Wis. 2d 518, 529, 285 N.W.2d 614 (1979). Although sometimes a statement can be considered not credible as a matter of law, there is no indication here that the testimony would inherently be "so confused, inconsistent, or contradictory" as to be considered not credible before anyone has even taken the stand. State ex rel. Brajdic v. Seber, 53 Wis. 2d 446, 450, 193 N.W.2d 43 (1972).