SHIRLEY S. ABRAHAMSON, J. (dissenting).
*316 ¶ 61 In an interview with law enforcement, the defendant gave equivocal statements regarding whether he touched the vagina of D.T., an eight-year-old girl. Given the circumstances of the instant case, advancing a reasonable doubt defense instead of properly investigating the defendant's frontal lobe injury amounted to deficient performance. In my view, a reasonable probability exists that but for trial counsel's failure to properly investigate the defendant's frontal lobe injury, the result of the defendant's trial would have been different.
¶ 62 Accordingly, I dissent.[1]
I
¶ 63 In Strickland v. Washington, the United States Supreme Court had this to say with regard to counsel's duty to investigate:
[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.
Strickland v. Washington, 466 U.S. 668, 690-91, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
¶ 64 Put another way, "[c]ounsel must either reasonably investigate the law and facts or make a reasonable strategic decision that makes any further investigation unnecessary." State v. Domke, 2011 WI 95, ¶ 41, 337 Wis. 2d 268, 805 N.W.2d 364. The *317 reasonableness of counsel's decisions is judged in the context of the circumstances as they existed at the time counsel made those decisions. Strickland, 466 U.S. at 689, 104 S.Ct. 2052 ; State v. Felton, 110 Wis. 2d 485, 502-03, 329 N.W.2d 161 (1983).
¶ 65 The following facts were known to the defendant's trial counsel at the time counsel made the decision not to further investigate the defendant's frontal lobe injury *117 and instead pursue a reasonable doubt defense:
• The defendant was interviewed by a detective four days after the defendant visited his daughter's classroom. D.T. was a classmate of the defendant's daughter.
• During that interview, the detective employed the Reid technique, a technique that involves law enforcement officials lying to the interviewee by claiming to have strong incriminating evidence that they do not in fact possess in order to induce the interviewee to disclose factually accurate details about the events in question.
• Pursuant to the Reid technique and without identifying the victim, the detective told the defendant that a student in his daughter's class had accused him of touching her inappropriately, that there were video cameras in the classroom, that male DNA had been found on the victim's clothing in the area she said she was touched, and that another student had partially substantiated the victim's allegation. Other than the fact that the defendant had been accused of inappropriately touching a student, none of what the detective told the defendant was true.
*318 • When the detective asked if anything the detective had just said made any sense to the defendant, the defendant responded by saying, "Yeah, I remember." Although the detective never identified D.T. as the victim, the defendant provided D.T.'s name to the detective and described how he "tickled" and massaged D.T.'s leg.
• Further questioning by the detective resulted in the defendant acknowledging that at some point while tickling and massaging D.T.'s leg, he had moved his hand under her pants. The defendant claimed that moving his hand under D.T.'s pants was not intentional.
• The detective told the defendant that D.T. claimed that he touched her vagina twice. The defendant responded, "I don't recall. I don't. I don't know. I didn't. I don't know, sir. I don't remember that happening, but-." The detective followed up, "Is it possible?" The defendant responded, "[Y]eah." The detective asked, "Do you know why?" and the defendant answered, "I have no idea. I'm not sexually repressed. I got a good sex life. I have kids. I wasn't thinking along those lines at all. I was just playing."
• In response, the detective accused the defendant of having intentionally put his hand down D.T.'s pants twice. The defendant responded by saying "I don't know. I don't-I don't recall ever doing it the second time, but it shouldn't have happened the first time, right."
• The detective then suggested that "[o]nce you walked out of that class I bet you were-well, you were probably just sick to your stomach." The defendant responded "Yes."
• Upon first meeting the defendant, trial counsel became aware of the defendant's brain injury. The *319 defendant wears an eyepatch, and he explained to trial counsel that he suffers from double vision as a result of a traumatic brain injury to his frontal lobe caused by a serious motorcycle accident that occurred 20 years before the events giving rise to the instant case.
• The defendant told trial counsel that he had fully recovered from the accident, and neither the defendant nor his family told counsel that they had *118 observed any behavior on the defendant's part that would indicate that the defendant's brain injury affected the defendant's behavior.
• Trial counsel, without bothering to obtain any of the defendant's medical records or consult with an expert knowledgeable about the connection between brain trauma and human behavior, chose not to further investigate because trial counsel did not observe any ongoing symptoms that he believed related to the defendant's brain injury.
¶ 66 Under these circumstances, I conclude that trial counsel's decision not to further investigate the defendant's frontal lobe injury and instead pursue a reasonable doubt defense constitutes deficient performance.
¶ 67 First, as would seem obvious from the recitation of facts above, a reasonable doubt defense was doomed to failure. Asked about whether the defendant had twice touched the vagina of an eight-year-old unidentified girl in her classroom during school just four days prior, the defendant identified the victim, acknowledged "tickling" her leg, and "[didn't] recall," or "[didn't] know" whether he had touched her vagina or not, but said that if he did, he did not do so intentionally. The majority is silent regarding the reasonableness of pursuing *320 a reasonable doubt defense in light of this damning evidence.[2]
¶ 68 Second, trial counsel's decision to not conduct further investigation into the defendant's brain injury was unreasonable under the circumstances. Both state and federal courts have found head injuries to be "red flags" that give rise to a duty for counsel to investigate further for neurological damage that may impact the client's case.[3]
¶ 69 In the instant case, trial counsel knew that the defendant suffered from double vision as a result of a traumatic brain injury to his frontal lobe caused by a serious motorcycle accident. Rather than consult with a neurologist about the effects of the defendant's brain trauma, or even obtain the defendant's medical records, trial counsel instead stopped his investigation after being told by the defendant and his family that they did not notice anything abnormal about the defendant's behavior. In my view, trial counsel did not do enough to discharge his duty to adequately investigate the defendant's frontal lobe injury and its impact on the defendant's case.
*321 ¶ 70 Given the impossible odds of a successful reasonable doubt defense, trial counsel's performance was not reasonable under prevailing professional norms and was therefore constitutionally deficient.[4]
II
¶ 71 In addition to proving that trial counsel's performance was constitutionally *119 deficient, the defendant must also prove that he was prejudiced by trial counsel's deficient performance. This requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. 2052. "A reasonable probability under the Strickland prejudice prong is a probability sufficient to undermine confidence in the outcome." Winnebago Cty. v. J.M., 2018 WI 37, ¶ 49, 381 Wis. 2d 28, 911 N.W.2d 41.[5]
¶ 72 I conclude that the defendant has shown prejudice in the instant case. Had trial counsel properly investigated the defendant's frontal lobe injury, he would have learned that the defendant suffered from frontal lobe syndrome. Trial counsel would have learned that as a result of the defendant's frontal lobe injury, the defendant suffered from a significant decrease in IQ; deficits to cognitive, emotional, and behavioral functioning; and abnormal impulsivity. Trial counsel also would have learned that symptoms *322 of frontal lobe syndrome include the tendency to not read social cues well. Had trial counsel consulted a doctor regarding the defendant's brain injury and its symptoms, he would have realized (and the defendant's family would have corroborated) that, consistent with frontal lobe syndrome, the defendant shuts down when faced with frustration, and often gives in to what others want in order to avoid confrontation.
¶ 73 Trial counsel's failure to properly investigate the defendant's frontal lobe injury prejudiced the defendant in at least two ways.
¶ 74 First, the information that would have been obtained through a proper investigation would have supported a plea of not guilty by reason of mental disease or defect. Given how disastrous a reasonable doubt defense was under the circumstances, pleading not guilty by reason of mental disease of defect may have been the only reasonable strategy to pursue.
¶ 75 Second, even if trial counsel chose to advance a reasonable doubt defense, trial counsel should have presented evidence of the defendant's frontal lobe syndrome and its symptoms to mitigate the effect of the inculpatory statements made to the detective during the interview. Coupled with testimony about the unreliable nature of the Reid technique and its likelihood of producing false confessions,[6] the defendant could have significantly mitigated the effect of his equivocal statements regarding whether he had inappropriately touched D.T.
III
¶ 76 As our understanding of the connection between brain trauma and criminal behavior develops, *323 defense attorneys must be on increased alert for red flags indicating neurological damage that could have an impact on their clients' cases. In the instant case, the defendant's trial counsel knew that the defendant suffered a traumatic brain injury to his frontal lobe but failed to properly and adequately investigate whether and to what extent that trauma affected the defendant's case. Trial counsel's failure to properly investigate the defendant's brain injury prejudiced the defendant *120 by causing him to argue an ill-fated reasonable doubt defense that was unreasonable under the circumstances.
¶ 77 I would conclude that the defendant succeeded in proving his claim of ineffective assistance of counsel and is entitled to a new trial.
¶ 78 For the foregoing reasons, I dissent.
¶ 79 I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

State v. Machner, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

While expert testimony on issues of law generally is inadmissible, the standard of care applicable to attorneys is not an issue of law but one of fact. For example, in legal malpractice cases in Wisconsin, not only is expert testimony admissible, it is generally required to establish a breach of the standard of care. See, e.g., Helmbrecht v. St. Paul Ins. Co., 122 Wis. 2d 94, 112, 362 N.W.2d 118 (1985) ("Expert testimony is generally necessary in legal malpractice cases to establish the parameters of acceptable professional conduct, given the underlying fact situation."); Pierce v. Colwell, 209 Wis. 2d 355, 362-63, 563 N.W.2d 166 (Ct. App. 1997) (holding plaintiff "was obligated to present expert testimony to sustain his claim that [lawyer's] alleged negligence caused injury or damage").

Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

See also Winnebago Cty. v. J.M., 2018 WI 37, ¶ 49, 381 Wis. 2d 28, 911 N.W.2d 41 ("This statement of the prejudice prong corresponds with another oft-quoted statement from Strickland about the prejudice prong, namely that the defendant was prejudiced if he or she was deprived of a fair trial whose result is reliable.").

The defendant presented expert testimony to this effect at the Machner hearing.